IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

VINCENT PALMER,

    Plaintiff,

v.                                                    CASE NO.: 4:09-CV-00137-SPM-WCS

ALBERSTON'S, LLC,

    Defendant.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This cause comes before the Court pursuant to a motion for summary judgment (doc. 25) filed by Defendant Albertson's, LLC ("Albertson's"). Plaintiff Vincent Palmer ("Palmer") filed a response and memorandum of law in opposition (doc. 38). For the reasons set forth below, the Court grants Albertson's motion.

### Background

Palmer brought this employment discrimination case against his former employer, Albertson's, alleging disability discrimination and retaliation pursuant to the Americans with Disabilities Act ("ADA") and the Florida Human Relations Act ("FHRA").

Albertson's hired Palmer on January 21, 2004 as a cashier at Store 4497 in Tallahassee, Florida. About one month later Albertson's promoted Palmer to

service operations assistant.  On October 23, 2006, George Collins ("Collins") became the store director of Store 4497.  Shortly after assuming this position, Collins learned of Palmer's diabetic condition both because Palmer told Collins that he had diabetes and because Collins observed Palmer using his insulin injector.  One month after Collins began working at Store 4497 and subsequent to learning of Palmer's diabetic condition, Collins promoted Palmer to assistant front end manager.  Collins later gave Palmer a second promotion to the drug third person position.[1]  After nine months of working for Albertson's as assistant front end manager or drug third person, Palmer resigned on the grounds that his hours of work conflicted with his school schedule.

    Within a few weeks, Palmer informed Collins that he regretted his decision to leave Albertson's and requested to return to Store 4497 as a bakery manager.  Albertson's had filled the drug third person position since Palmer's departure, but Palmer had learned that the bakery manager job had become vacant.  Palmer had no prior baking experience, but Collins offered Palmer the position based upon his general approval of Palmer's prior work performance.  Albertson's ranks bakery manager as a hierarchical step above the drug third position.

    Because Palmer lacked baking experience, Collins arranged for one of Albertson's vendors to visit the store and work with Palmer for five days.  Collins also arranged to have an Albertson's district bakery manger provide Palmer with additional training during this five day period.

---

[1] The drug third person functions as the assistant to the drug manager and assumes responsibility for the entire store when the store director, grocery manager, and drug manager are absent.

In November of 2007, Palmer took a medical leave of absence to regulate his blood sugar. He returned to work on December 7, 2007, with a doctor's note that limited Palmer to working forty hours per week. On December 12, 2007, Palmer filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") alleging that Albertson's had discriminated against him based upon Palmer's disability and Albertson's failure to accommodate him. Specifically, Palmer alleged that Albertson's had altered Palmer's work schedule and refused to permit him breaks to eat when his insulin was low. Albertson's responded by claiming that Palmer is not disabled, that Palmer did not request any accommodations, and that Albertson's did not otherwise discriminate against Palmer. The FCHR dismissed Palmer's charge and the EEOC adopted the FCHR's findings.

Palmer continued to work at Albertson's after filing his EEOC charge. As part of the required training for all managers, Albertson's scheduled a mandatory bakery shrink meeting for all Tallahassee stores to take place at Store 4497 on March 6, 2008. Tara Schmidt ("Schmidt"), Division Training and Development Manager, emailed all of the relevant stores four months in advance to provide sufficient notice so that all attendees could make arrangements to attend. Palmer contends that Schmidt sent this email while Palmer was on sick leave and that he did not become aware of the email's existence until after the filing of the current lawsuit. Albertson's sent additional reminder notices with the final one dated March 3, 2008. On March 3, Collins also spoke with Palmer in person

and asked Palmer to make arrangements to attend the meeting. Palmer claims he had the day of the meeting off of work and that he could not find a coworker to trade shifts to facilitate his attendance.

On March 5 at approximately 6 p.m. on the evening before the meeting, Palmer notified District Bakery Operations Specialist Cathi James that he could not attend the meeting because Collins had not scheduled him to work. Palmer then failed to attend the meeting. On March 8, Collins met with Palmer to discuss Palmer's absence from the meeting. According to Collins, Palmer failed to adequately explain his absence so Collins discharged Palmer because of Palmer's uncooperative attitude and disregard of Collins' direct instruction to attend the meeting. Palmer denies acting in an uncooperative manner.

**Standard for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), a court should grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "material" if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. Id.

The moving party bears the burden of showing that no genuine issues of material fact exist. Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000). "In assessing whether the movant has met this burden, the courts should view the evidence and all factual interferences therefrom in the light most favorable to the party opposing the motion." Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (quoting Clemons v. Dougherty County, 684 F.2d 1365, 1368-69 (11th Cir. 1982)). Similarly, courts should resolve all reasonable doubts about the facts in favor of the nonmoving party. Id.

If the moving party satisfies this burden, then the burden shifts to the nonmoving party to produce evidentiary material that demonstrates a genuine issue of fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251.

### Disability Discrimination Claim

"In order to establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified individual,

and (3) was subjected to unlawful discrimination because of [his] disability." Greenberg v. Bellsouth Telecomms., Inc., 498 F.3d 1258, 1263 (11th Cir. 2007). This standard derives from the language of the ADA, which mandates that "no [employer] shall discriminate against a qualified individual with a disability because of the disability of such an individual." Id.; 42 U.S.C. § 12112(a) (2006).

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such impairment; or, (C) being regarded as having such impairment." Albright v. Columbia County Bd. of Educ., 135 F. App'x 344, 345 (11th Cir. 2005) (quoting 42 U.S.C. § 12102(2)). Palmer alleges discrimination pursuant to each of these three definitions.

Beginning with subsection (A), the parties do not dispute that Palmer suffers from insulin-dependent diabetes, which constitutes a physical impairment pursuant to the ADA. See 45 C.F.R. pt. 84 App. A, subpart (A)(3) (defining "diabetes" as an impairment). The second prong of the definition, however, requires that the impairment substantially limit one or more Palmer's major life activities. Durley v. APAC, Inc., 236 F.3d 651, 657 (11th Cir. 2000). Courts make such a determination on a case-by-case basis. Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1155 (11th Cir. 2005).

Regulations issued by the EEOC define "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i)

(2008). "Substantially limits" means that an individual cannot "perform a major life activity that the average person in the general population can perform" or the individual is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the . . . average person." 29 C.F.R. § 1630.2(j).

"[T]he ADA requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." Toyota Motor Mfg., Inc. v. Williams, 534 U.S. 184, 198 (2002). The Supreme Court has further noted that the phrase "substantially limits" requires "that a person be presently – not potentially or hypothetically – substantially limited in order to demonstrate a disability." Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999). In particular, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently substantially limits a major life activity." Id. at 482-83.[2]

Palmer alleges that diabetes substantially limits his ability to eat. Because of his diabetic condition, Palmer must monitor his blood sugar, eat at varying intervals, and administer insulin injections.

---

[2] The ADA Amendments Act of 2008 superseded the holdings of Sutton and Toyota as of January 1, 2009. However, the Act does not apply retroactively, so the Court must analyze Palmer's claim pursuant to the ADA provisions and interpretative case law in effect at the time the alleged discriminatory conduct took place. See Fikes v. Wal-Mart, Inc., 322 F. App'x 882, 883 n.1 (11th Cir. 2009) (acknowledging the Amendments Act of 2008, but noting "we look to the ADA as it was in effect at the time of the alleged discrimination"); Grizzle v. Macon County, No. 5:08-CV-164 (CAR), 2009 WL 2611319, at *9 (M.D. Ga. Aug. 20, 2009) (stating that the ADA Amendments Act of 2008 does not apply retroactively).

The Eleventh Circuit first addressed eating as a major life activity in Collado v. United Parcel Service, Co.,419 F.3d 1143 (11th Cir. 2005). In Collado, the court reviewed a trial court's decision to set aside a jury verdict in favor of an insulin-dependent diabetic, granting judgment as a matter of law to the employer on the diabetic's ADA-based discrimination and retaliation claims. Id. The plaintiff in Collado monitored his sugar and carbohydrates intake, received injections of insulin throughout the day via an insulin pump, and manually administered additional units of insulin as necessary. Initial Brief of Appellant at 37-38, Collado v. United Parcel Serv., Co., 419 F.3d 1143 (11th Cir. 2005) (No. 04-11297). The court assumed for purposes of the decision that eating constituted a major life activity, but held that the plaintiff did not provide evidence from which a reasonable jury could find that the plaintiff's diabetes substantially impaired his eating. Collado, 419 F.3d at 1155. The court noted that many people must monitor their food intake for health and lifestyle reasons and that all insulin-dependent diabetics do not have a disability for ADA purposes. Id. at 1156.

Furthermore, the court distinguished the facts of Collado from the facts underlying Fraser v. Goodale, an opinion referenced by both the Collado plaintiff and by Palmer in the current dispute. 342 F.3d 1032 (9th Cir. 2003). The Ninth Circuit found that the plaintiff in Fraser presented a genuine issue of material fact as to whether she was substantially limited in the life activity of eating. Id. Fraser, deemed a "brittle diabetic," suffered extreme dietary limitations. Id. at

1041. She could not live alone because the timing of her meals and injections required extreme precision; Fraser could find herself in an ambulance if she took too long of a nap between an injection and breakfast. Id. Fraser also required the constant supply of certain food items in case her blood sugar dropped or skyrocketed. Id. Fraser could not put a morsel of food in her mouth without assessing whether the food would tip her blood sugar out of balance. Id. Finally, Fraser could not skip or postpone even a snack without cautiously studying her insulin and glucagon levels. Fraser, 342 F.3d at 1041.

Palmer has not alleged eating restrictions or limitations that rise to the level of those suffered by the Fraser plaintiff. Instead, Palmer's dietary restraints more closely resemble those of the Collado plaintiff where the court held that no reasonable jury could find a substantial limitation of eating. See also Cash v. Smith, 231 F.3d 1301, 1306 (11th Cir. 2000) (affirming the grant of summary judgment against an ADA plaintiff who suffered from seizures, diabetes, migraines, and depression because although her ailments "have had an adverse impact on Cash's life, there is no evidence that they have limited her in a major life activity"); Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258 (11th Cir. 2007) (affirming the grant of summary judgment against an ADA plaintiff who suffered from diabetes, hypertension, hypothyroidism, and obesity because the plaintiff could not establish that he was disabled pursuant to ADA standards).

Moreover, Palmer has not produced evidence that shows his diabetes substantially limits him in any other major life activities. Palmer testified that he

regularly performs cardiovascular and weight-lifting exercises and that he occasionally plays football, basketball, tennis, and golf. (Doc. 25-7, p. 8-9). Palmer's physician, Dr. Joy Ablordeppey, similarly recognized virtually no restrictions on Palmer's ability to return to work following his medical leave of absence. (Doc. 33-4, p. 4). Dr. Ablordeppey cleared Palmer to sit, stand, walk, and repetitively use each of his hands for up to eight hours; she also noted no restrictions on Palmer's ability to lift or carry heavy items.[3] (Doc. 33-4, p.4). Palmer himself testified that so long as his blood sugar is controlled, his diabetes does not prevent him from engaging in any activity whatsoever. (Doc. 25-7, p. 15). Although diabetes negatively impacts Palmer's life, Palmer has not produced evidence that shows his condition has limited him in a major life activity. See Cash, 231 F.3d at 1306.

Palmer next argues that he satisfies the ADA's definition of "disability" pursuant to § 12102 (B), the record of impairment definition, which requires an individual to have actually suffered an impairment that substantially limited one or more of the individual's major life activities. 42 U.S.C. § 12102(2) (2006); Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1229 (11th Cir. 1999). Palmer does not satisfy this standard because although he suffers a qualifying physical impairment, diabetes, the impairment does not substantially limit Palmer in one or more of his major life activities.

---

[3] Dr. Ablordeppey only noted that Palmer required breaks, as necessary, to check his blood sugar.

Pursuant to the third prong of the ADA's definition, Palmer argues that he suffers a disability because Albertson's regarded Palmer as having an impairment that substantially limited one or more of Palmer's major life activities. 42 U.S.C. § 12102(2). In particular, Palmer claims that Albertson's regarded him as substantially limited in the major life activity of working.

An employer may regard an individual as having a disability by: (1) mistakenly believing that an individual has a physical impairment that limits one or more major life activities, or (2) mistakenly believing that an actual, nonlimiting impairment substantially limits one or more of the person's major life activities. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). Common to each prong of the ADA definition is the requirement that the individual not in fact have an impairment that, absent the misperceptions of others, would substantially limit a major life activity. Id. Thus, Palmer must show that Albertson's perceived Palmer as unable to work or engage in a broad class of jobs as compared to the average person who received comparable training. 29 C.F.R. § 1630.2(j)(3)(I).

Palmer cannot satisfy this standard. Albertson's promoted Palmer with knowledge of his diabetes. Albertson's also rehired Palmer to a position where Palmer lacked experience with knowledge of Palmer's diabetes.

Palmer argues that Collins reduced Palmer's hours after Palmer returned from his medical leave and that this reduction of hours shows that Collins, and thus Albertson's, viewed Palmer as disabled. However, Collins reduced Palmer's

hours only after Palmer claimed that his diabetes prevented him from working past 5 p.m.

Palmer thus has not established a disability pursuant to ADA standards. Based on the foregoing, Albertson's motion for summary judgment is granted with respect to Palmer's claim of disability discrimination.

### Retaliation

In addition to alleging disability discrimination, Palmer asserts an ADA retaliation claim. The ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a) (2006). To state a prima facie claim for ADA retaliation, a plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment decision; and (3) that a causal link existed between the protected activity and the adverse action. Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse action. Crawford v. City of Fairbum, 482 F.3d 1305, 1308 (11th Cir. 2007). If the employer articulates such a reason for its treatment of the plaintiff, then the burden returns to the plaintiff to produce evidence sufficient to raise a genuine issue of material fact with regard to whether the employer's proferred reason for

the adverse action was pretextual. Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1103-04 (11th Cir. 2001).

To show pretext, a plaintiff must "demonstrate that the proferred reason was not the true reason for the employment decision . . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proferred explanation is unworthy of credence." Tex. Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 256 (1981). A plaintiff cannot recast an employer's proferred non-discriminatory reasons or substitute his business judgment for that of the employer, however. Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000). If the proferred reason might motivate a reasonable employer, a plaintiff must meet that reason head on and rebut it; the plaintiff cannot succeed by simply quarreling with the wisdom of that reason. Id.

Albertson's does not dispute the first two elements of Palmer's prima facie case, namely, that Palmer engaged in a statutorily protected expression and that he suffered an adverse employment decision. Palmer claims that evidence of temporal proximity establishes the third and final element of the prima facie case – a casual connection between Palmer's protected activity, his complaint of discrimination, and the adverse employment action, his discharge from employment. In particular, Palmer points to an e-mail that he sent to Collins on March 3, 2008, five days before Collins discharged Palmer. In the e-mail, Palmer reported the failure of Albertson's to make accommodations for his diabetic

condition and the general hostility that he felt from Albertson's employees. Palmer claims that Albertson's discharged him in retaliation for this complaint.

The Supreme Court has held that "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action . . . must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). Generally, a temporal proximity of one month or less satisfies this standard. See Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (finding a timeframe of seven weeks sufficiently proximate to create a causal nexus for establishing a prima facie retaliation claim); Shotz v. City of Plantation, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (noting that a period of one month between the protected activity and the adverse action can establish the causal connection). Cf. Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that a three-month period between the filing of an internal complaint and the adverse employment action does not satisfy the temporal proximity causation standard); Wascura v. City of S. Miami, 257 F.3d 1238, 1248 (11th Cir. 2001) (holding that in the absence of any other evidence of causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation). Only five days elapsed between the submission of Palmer's complaint and his discharge, thus Palmer has satisfied the causal element of his prima facie retaliation claim.

The burden now shifts to Albertson's to articulate a legitimate, non-discriminatory reason for Palmer's termination. Albertson's claims that Palmer

failed to attend a mandatory meeting and in doing so directly contravened his supervisor's instructions. Albertson's further alleges that Palmer displayed an uncooperative attitude. Each of these explanations constitutes a legitimate, non-discriminatory reason for adverse employment decisions. See Brown v. Pulaski County Bd. of Educ., 263 F. App'x 842, 843 (11th Cir. 2008) (finding that an employer met its burden of proving legitimate, non-discriminatory reasons for termination when the plaintiff would not follow instructions, acted unprofessionally, and exhibited rude, discourteous, and disrespectful behavior).

Because Albertson's has proffered legitimate reasons for Palmer's discharge, Palmer, to avoid summary judgment, must introduce "significantly probative evidence" that the reasons function merely as a pretext for discrimination. Brooks v. County Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006). Palmer can show pretext by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Albertson's explanation. Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).

Palmer claims that Albertson's, and specifically Collins, created the circumstance that led to Palmer's discharge. In particular, Palmer alleges that Collins did not schedule Palmer to work the day of the meeting and that Collins made the schedule this way so that Collins could discharge Palmer because of his diabetes or to retaliate against him.

However, Palmer testified that he knew of the meeting days in advance and similarly knew the meeting was mandatory. Palmer also testified that Collins

told Palmer to adjust his own work schedule so that Palmer could attend. Palmer testified that he could not adjust his work schedule, so he voluntarily elected not to attend the meeting because attending would require Palmer to work more than forty hours in one week.

Palmer's allegations do not show that Albertson's asserted reasons for Palmer's discharge, insubordination and an uncooperative attitude, serve only as a pretext for discrimination. Albertson's District Manager Anna Woods testified that failure to abide by a supervisor's request to adjust a work schedule constitutes insubordination. Moreover, Albertson's discharged two other employees for similar displays of insubordination and neither employee claimed to have a disability. In sum, Palmer has not addressed Albertson's reasons for termination "head on" and rebutted them. See Snowden v. City of Daphne, 283 Fed. Appx. 693, 695 (11th Cir. 2008) ("A claimant cannot establish pretext by simply demonstrating facts that suggest retaliatory animus but must specifically respond to the explanation of the defendant."); Brooks v. County Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006) ("A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'") (quoting St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502, 515 (1993)).

Accordingly, Albertson's motion for summary judgment is granted with respect to Palmer's claim for retaliation.

**Disability Harassment**

Finally, the Court turns its attention to Palmer's claim for disability harassment. Palmer did not raise this claim in his initial complaint and cannot introduce this claim for the first time in response to Albertson's motion for summary judgment. See Blanton v. Bunch & Assocs., Inc., No. 08-CV-1057-T-27MAP, 2006 WL 269981 at *8 (M.D. Fla. Feb. 3, 2006) ("Plaintiff did not plead a hostile work environment claim in her complaint and may not raise this claim for the first time in response to Defendant's motion for summary judgment."); Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (stating that claims not raised in a complaint cannot be raised for the first time in plaintiff's response to defendant's motion for summary judgment). Accordingly, a claim for disability harassment is not before this court. Blanton, 2006 WL 269981 at *8.

## CONCLUSION

Albertson's is entitled to summary judgment on Palmer's claim of disability discrimination because Palmer's diabetic condition has not rendered him disabled according to ADA standards. Similarly, Albertson's is entitled to summary judgment on Palmer's claim of retaliation because Palmer did not establish that Albertson's reason for discharging Palmer constituted a discriminatory pretext. For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant Albertson's motion for summary judgment (doc. 25) is granted.

DONE AND ORDERED this <u>third</u> day of March, 2010.

        *s/ Stephan P. Mickle*
Stephan P. Mickle
Chief United States District Judge